Case No. 18-5218 at Elm. Planned Parenthood of Wiscons v. Alex Azar, II and his position capacity as the United States Health and Human Services Secretary at Elm. Mr. Wolfson, the appellants. Ms. Willey, the appellees. Mr. Wolfson, the appellants. Good morning, Your Honor. May it please the Court. Paul Wolfson for the plaintiffs. I'd like to reserve three minutes for rebuttal time. This case is not about a challenge to any particular grant awards under Title X. This case is about the agency's effort to change the criteria by which it decides which applicants will be awarded funding without going through notice-and-comment rulemaking. Now, it is true that the agency has awarded funds for fiscal year 2018, but what the plaintiffs are concerned about is now is retaining the ability to challenge the agency's evasion of notice-and-comment rulemaking in the future. And as we see by fiscal year 2019, the agency continues to use funding opportunity announcements to make substantive decisions affecting the grant-making decisions beyond the system. Excuse me, Your Honor. Right this minute, they're not. You might ought to address mootness. Yes. We've got jurisdiction. Absolutely, Your Honor, and I will do that right now. So there clearly is a question of the Court's jurisdiction and turning it out first. As I said, it's true that the funds have been disbursed, and we're not asking the Court to recall the funds. It's also true the agency has issued an FOA for 2019. And should the Court believe that this case is moot, then it should vacate the decision of the district court and remand with instruction to dismiss the case. But we do have a significant concern that the agency is attempting to evade review through, in effect, voluntary cessation by what it's done in 2019. Since they're following the same methodology on the grant that they have all the time, it doesn't look like they're doing something deliberately to evade review when they do what your own brief describes as them having done for years. Hadn't this procedure been followed for years? So, Your Honor, I think actually what they've done in 2019 is similar to what they did in 2018, but different from what they did ever before. So just to kind of go back. Procedurally, how is it different? That doesn't sound like they're deliberately trying to evade anything, but when they're doing the same procedure they've done all the time. So our concern about evasion, I think there are two concerns we have about evasion. And again, I do want to emphasize that if the Court thinks that the case is moot, then the proper remedy is to vacate. But let me address what our concerns are here. So when you look at the 2019 FOA, there's no question that what the agency has done here is more moderate on the specific issues that we're concerned about than it was in 2018. But what we are concerned about here is that the agency has essentially drawn in, has trimmed its sales while this case is on appellate review. And then once this case was disposed of in 2020, it could go back to what it did in 2018. So that raises, I think at a minimum, a voluntary cessation issue, which, you know, presents a concern. The second thing I think... Just one more moment. I'm not trying to dominate because I'm the most junior person here. No, Your Honor. We recognize that this is a significant jurisdictional concern. I'm trying to explain why we are concerned about the problem of evading review. So if the court does think it's moot, then we want to be able to take the... We want to be able to challenge the agency... Go on to that point. Whether we agree... Even if we don't agree that there's a danger of evading review, the remedy's going to still be the same as far as you're concerned at this point, and that is that we vacate and remain for dismissal. Well... Once we find mootness, whether we find the evading review problem or not, it's still going to be wiped out, Judgment Boyle, right? Well, if the court thought it was just moot, it would be wiped out. If the court thought that there was an exception to mootness, such as evading review or voluntary cessation, then the court would proceed to address at least some of the questions on the merits. The principal one here being today, I think, notice and comment rulemaking, which is kind of the focus of our concern. The issue about... There is, I also think, a kind of evading review problem here, which is the time period for challenging these decisions is so short. It's really just a couple of months, and it's impossible to get sort of full-scale judicial review during that period. So can I just ask the nuts and bolts of how you might get review in this context? Sure. So one issue you have is a finality problem because you are not challenging the award of the grant. Right, and I'd like to address that because I think... Sorry. Yeah, so I'm just... Is there some reason why you couldn't have done that? People all the time seek money from the government, and if they're denied the grant or they think the grant wasn't enough, they can challenge that. So, and this was, you know, the district court certainly thought, well, you should challenge the final, the actual grant decision. You know, as a practical matter, Your Honor, in our view, that's impossible. And I think, you know, the court has always said, you know, finality has a practical dimension, and I'll explain why. Okay, right, right. But I know you have arguments about finality, but just in terms of how this might work. Sure. So the grant, so here's how it works. The grants are awarded, or there is an announcement goes out to the committee. The announcement was August 2nd. Right, and the... And the obligation was September 1st. Well, typically the awards go out, you know, within two to three weeks after the announcement is made. In our view, it is, as a practical matter, impossible to challenge the grant awards during that, you know, during that time. Well, but if you go to our decision in the Houston case, where we talk about mootness problems that arise in the context of challenging grants, we seem to assume that you can challenge a final decision awarding or not awarding a grant. And let me just get it out. And when you do that, you have two problems of looming mootness. One is that the appropriation might expire, and the other is that the funds might be obligated to someone else. And we say you can solve both those problems by seeking preliminary relief. So why couldn't you have done that here? Well, in the Houston case, of course, there was no... It didn't have the feature that this case had, which is that the agency had sort of announced its criteria in advance, you know, of... You know, the agency announced how it would... All I'm probing is whether there's some reason why you couldn't have challenged the final grant decision. So I think, as a practical matter, it would have been impossible. First of all, there's the very short time period. I mean, the money is out the door in two weeks. Secondly, the remedy... From announcement to obligation. To obligation. Okay. Secondly, two, three weeks. Secondly, the remedy in such a situation would be... You know, certainly the immediate remedy would be stopping the funding from being obligated to other people. I mean, a remedy would be like basically bringing a halt to the program by stopping the agency from issuing funding. That's not a remedy anybody wants. I mean, nobody wants... We certainly don't want, you know, the funds not to go out to people. We want the funds to go out in the right way. So nobody wants a remedy in which we would have to go to the district court and say, you know, please issue a TRO against the agency funding, you know, funding anybody or funding, you know, a large number of people who might be affected. There's also the problem that, you know, when you are denied your grant, you don't know, you know, you don't see any other applications and so it's sort of difficult to know, you know, what your challenge might be. It seems to me as a practical matter... I get those points. That makes some sense. But what would you do in just a perfectly normal case where you get the grant award and you're not happy with it and you want to challenge it? Well, the agency has taken the position, excuse me, throughout this litigation that there's nothing we can do. Because the agency has taken the position, certainly they emphasize it in the district court. They found it, you know, they didn't... They found it convenient not to repeat that here, but they've taken the position that the, you know, actual challenges to grant decisions are, you know, within the agency's discretion as a matter of law and not even subject to judicial review. So we certainly... We run that risk if we're going into court later. So as a practical matter, Your Honor, when the agency announces these are the legal criteria we will apply to a grant application, it seems to me the only possible time you can challenge that is when the grant application issues and that's our fundamental disagreement with the district court's finality ruling. That being the case, you know, I just want to touch, you know, on notice and comment, too, because I think that is here, you know, our fundamental concern going forward, which is the agency, it seems... It sounds like an admission that it would be possible to go for a preliminary relief in a district court. Now, the fact that you don't want to would not seem to me to bring it under the aegis of evading review. You can get review in a district court. The fact that you don't want that kind of review doesn't mean you don't get review. I think the evading review looks to sort of the whole, you know, time period that we have and I think that if we... Yes, and the review would be the same as it would be if you had a year. You still could go in for a preliminary injunction or a PRO, preliminary injunction. But if we lost, Your Honor, there'd be... I don't see that you're getting past the mootness. We don't want to do that. If we lost, Your Honor, there'd essentially be no way of our being able to take an appeal because the money would be out the door. I mean, indeed, there'd be no way of even... You don't think you could apply for a stay? I mean, there'd be even no way of moving for summary judgment. I think we could, you know, perhaps we could apply for a stay, but I think, you know, given the way... I mean, even in this case, we asked for a preliminary injunction. You know, we did... You know, we and the government agreed to expedite the case. It still took, you know, a month and some for the district court to decide the case. We appealed one day after the district court's judgment was issued and then we applied for a stay to this court and it was denied. I mean, I think, you know, final... I mean, the court, you know, has always said finality is a practical concern. You know, there is a strong practical element to that. I see my time is winding down. I just do want to touch on notice and comment, you know, briefly. Our question... Just on finality, before you move on, to tie down the same kind of point in the context of finality. I mean, our most recent decision in this area is soundboard and the idea that finality turns on practical pressures as opposed to just the formal structure of the agency decision-making was the view of the dissent, not the majority. Well, I mean, I go back to Abbott Labs where the Supreme Court certainly, you know, looked at practicality. I also look at, you know, long-standing cases of this court like Batterton v. Marshall, which is cited in the briefs, and, you know, and other similar cases where the court has said, you know, you have to look at... It's not just a question of kind of legally binding. It's a question of what the, you know, consequences will flow. And here, I think the consequences are... Well, first of all, the agency itself, you know, is obligated to consider these applications in a certain way. I mean, that's, I think, the whole point of the FOA, that the agency is committing itself to consider this eighth criteria. But the final decision-maker is expressly permitted, required, whatever, to consider a lot of other additional circumstances. So I don't think that's right, Your Honor, and I also don't think it matters. And the reason why I don't think it matters is if you inject an illegal criterion into the, you know, into the consideration, it seems to me there has to be a way of getting judicial review of that. And it has to be the case... I mean, the agency... This is the agency's decision to make, you know, to decide who's getting the court. Now, the agency and the FOA has said, we want to consider what I'll call the eighth criterion, you know, for shorthand. I'm sorry. The eighth criterion, you know, which... That the deputy assistant... Well, yes, I mean, the eighth is certainly being scored... My understanding is that there are four in the statute... Right. And then three more in the regs... Right. And then four more that the deputy assistant can look at as the final decision-maker. So, that's not exactly right. I mean, there's eight. So, for years, the scoring panel... You know, first of all, the regulation itself says... And I think you have to go back to what the regulation itself says. The regulation itself says the agency will consider these seven criteria. Now, the agency here has added an eighth. Now, what is the deputy assistant secretary doing? The deputy assistant secretary apparently is considering four. We view those four as sort of not different from the seven. You know, they may be sort of weighed in a different way. But this, I think, is a crucial point. However it is considered, whether it's being considered by the review panel or by the deputy, somebody at the agency is considering this eighth criterion in a meaningful and substantive way. It has to be because the agency has told us in the FOA it wants this eighth criteria to affect who is going to get grants. Well, you assume it would have some effect because otherwise, why add it? Well, that's exactly right. Now, the government seems to be taking the position that, well, the merits panel reviews the eighth. You know, the deputy, you know, I mean, who knows what the deputy does. The deputy considers the four, but, you know, there's no indication what the deputy is considering, the seven or the eight. I just don't see how that can be the case, Your Honor. I don't see how you can square that with the regulations. The deputy assistant secretary is part of the agency. She has to consider what the regulation says the agency will consider. And I just don't see how the agency seems to be saying, you know, it's interesting that the review panel considers the eight. I'm sorry. What you're calling the eighth are the program priorities and key issues in the funding announcement? Yes. So the agency has... So if you're saying the deputy assistant is obviously going to consider those, I'm with you. I get that. Right. But I was talking about the deputy assistant has other criteria besides the statutory and regulatory criteria. And the fact that the deputy's review, to that extent, is broader than the review of the panels, at least suggests that the panel recommendations are just that. They're interlocutory. So we've not challenged the four criteria that the deputy assistant secretary is considering. We view those four as sort of fitting comfortably within. They're sort of a different way of looking at the seven. And they sort of trace back to... A lot of them have to do with geographic distribution of the services, and they trace back to a time when the agency centralized its review of the seven criteria in the deputy assistant secretary previously that it had done at the regional level. Can I ask a question? I think I'm missing one thing, which is that if let's just assume that there is a reservoir of discretion left in the deputy secretary, but that it's also the case that the deputy secretary takes into account what the panel did. That could very well be the case, Your Honor. That I don't think... But does that mean that there's no finality in the change to what the panel does? I don't think so. Our challenge is not to the idea that the deputy assistant secretary might have some discretion. Our challenge is to the fact that an eighth unlawful factor has been injected into the system, and that factor has to be being considered by the agency somewhere. It's either being considered by the... It seems to me one of two things is happening. One is what we think is the case, which is the panel is considering the eighth factor, and the deputy assistant secretary is basically deferring to those decisions. The second, it seems to me, is what the government is suggesting, which is the deputy assistant secretary is considering all the factors. Because the panel's decision is fundamentally advisory, but somebody at the agency... The regulation says the agency is going to consider these factors. So the decision maker at the agency has to be considering the factors. It may be the deputy assistant secretary, but if an eighth illegal factor is injected into that system, then what the agency is doing is unlawful. And the only way we can get judicial review of that is now. Can I ask a question about the notice of comment piece of it, which is that as I understand the history of this, the addition of the point system, not the criteria themselves, so the criteria spelled out, the seven criteria spelled out in the regulation, and then the way the scoring works with the application is that there's points assigned. Correct. The introduction of the point system itself wasn't done through notice of comment. That's correct, and we don't... I think that could be viewed as a procedural rule. I mean, the regulation says the agency shall take into account these seven factors. It doesn't say specifically how the agency shall take into account. The agency can certainly weigh those in a particular way, I think, up to a point. We don't have a problem with a point system that actually helps advise the community about... So you wouldn't think it would require notice of comment, for example, if initially the regulation comes out and says here's the seven criteria, then by something short of a regulation, there's an announcement made as to the point values assigned, and let's just say they went 90, you know, 1, 1, 1, 1, 1. I'm not going to do the math wrong. Right. No, no, no. And then someone switches the 90 to 4. I understand. I do think there may be limits to the agency's discretion. First of all, that could be arbitrary and capricious. You know, if the agency essentially, if there are seven factors and what the agency essentially is saying is we're really only considering one, No, but let's suppose they explain it. They just don't do it through notice and comment. I think there is a limit to their ability to do this without notice and comment. You know, one could argue I would think that that would so fundamentally change the nature of the program that it would require notice and comment. But what the agency has done here, you know, up until now, which is assign a point system, the points, you know, they go up and down from year to year, but not, you know, until this year, not kind of wildly so. That practice, we do not argue, requires notice and comment. So your challenge on the merits is not incorporation of the factors into the scoring system. It's just fundamentally that these factors in the funding announcement are substantively wrong. They go beyond the seven enumerated ones and they're arbitrary. And no notice and comment. And that would be true regardless of how they're scored. I think that would be true regardless of who is the decision maker. Thank you. Good morning, Your Honor. Jamie Lilly for the government. I'd like to start with the, to answer some of your questions about what exactly the factors are that plaintiffs have challenged. These are a method by which the agency collects information from grant applicants, processes the applications, and an independent advisory committee outside of the agency, composed of experts outside of the agencies, scores those applications to provide further information to the final agency decision maker. I have a few questions just to start off on mootness. Yes. I'm following the government's position on this. I mean, we obviously have an obligation to understand mootness on our own. But from your perspective, does the government think that the right way to proceed here is to challenge the grant and then seek some sort of emergency relief that would have the effect of stopping funding? Your Honor, the final agency action that is appropriate for challenge here would be the agency's final award decisions. And plaintiffs have disclaimed any challenge to those awards. And that makes sense, Your Honor, because the conclusion or the consummation of the agency's decision-making process is in the decision whether to grant an award and in how much. How would they do that? Is that judicially reviewable? Yes, Your Honor. That when a decision is made, the plaintiffs could, as you described in the city of Houston case, and as Your Honor summarized, could come and... The city of Houston is the conceptual point, mootness points that arise, that can arise when a party, the agreed party, is seeking funding. But what's the judicial review mechanism here? Because your colleagues have made some pretty good practical arguments that there's just no better way to do it. Certainly the practicalities are that there may be a small window in any particular case in which the grantee who's dissatisfied can come into court. But that doesn't alter the APA's requirement that the plaintiff must challenge a final agency action. And the agency has not concluded its decision-making process, certainly not at the point where it's issued a funding opportunity announcement saying, this is how we're going to gather and analyze. Is there always a gap between the time when the grant decisions are announced, which on your theory is the final agency action, and the time when the funds are obligated, which under Houston would be the mooting event? Your Honor, I can't speak to all of the grants programs throughout the entire executive branch. No, but this one. But in the main, in Title X grants world, there is typically a period of time at which the grant award has been finalized and the funds can be drawn down and are dispersed. And the review is through the APA, just the default review provisions for challenging final agency action? Or does it go to the claims court because you're seeking money from the government? How does it work? Your Honor, in this case, we believe that the plaintiffs challenge through the APA the decision whether to grant or deny, to make a grant award through the APA, and that they could do that once the agency has concluded its decision-making process. So for purpose, then we have to deal with evading review on the mootness issue. So your idea is that there's no evasion review because there's some period of time between the time that the funding decision is made and the time that the money is actually allocated? Yes, Your Honor. But plaintiffs also must show that their claims are capable of repetition. Right, but I'm discussing evading review right now. Yes, Your Honor. Yeah, and we can deal with capable repetition. But on evading review, is the government's perspective that do you disagree with the representation that the time frame is roughly two to three weeks? I think that in any particular case it may differ, but that sounds about right. Okay, so let's assume that that's roughly right. Yeah. Then the government's view is that two to three weeks is enough to overcome an evading review point? Because I thought our decisions indicated that time period that's that short is a time period that would indicate that there's a danger of evading review. Well, Your Honor, there may be a danger that review can't be completed, but if, as Judge Katz has pointed out, the plaintiffs had come into district court and sought a preliminary injunction and the dispersal of grants or any particular grant decision were enjoined, then this court review could be completed. Isn't that odd? That just seems like a pretty profound proposition because there's always the possibility of seeking a preliminary injunction in any kind of case. That's right, Your Honor. And even if there was four days, you could always go in and try to seek a TRO and then a PI. And I guess it wasn't apparent to me that that means that there's no problem with evasion of review just because the prospect of a PI or a TRO is always out there. Well, Your Honor, I mean, that's certainly what this court suggests in the City of Houston case. In the converse, that the plaintiff at any point in the grants-making process, as soon as it gets a whiff of something that it may or may not disagree with, regardless of how the consummation of the agency's decision-making process concludes, could come into court at any time, also makes no sense within the confines of review. But that's not an evasion of review issue. That may be – I understand your point, but I don't understand why that's an evasion of review point. It may not be. But, Your Honor, the plaintiff's point is that they should be able to challenge the funding opportunity announcement and not even bother to challenge the grant award. No, I think – I assume what they would say is not that they should be able to do that regardless. I think what they would say is they should be able to do that as long as the challenge to the grant would evade review. Right. That's the question, is whether another vehicle would evade review. And if that evades review, then it seems like there's not a mootness problem. That may be, Your Honor. But the plaintiff's claims here are certainly not capable of repetition, as we've pointed out. The claims are specific to the substantive criteria in the previous funding opportunity announcement. Those have all materially changed. So on that point, should we distinguish between some of the more granular, arbitrary, and capricious challenges? As to which I take your point, every year is different, and 2019 looks materially different from 2018. But should we distinguish those kinds of claims from their threshold legal claim, which is that the seven regulatory factors are exclusive? Your Honor – And that question might be more likely to repeat. I take your point that the agency's assertion of legal authority to exercise its discretion in this way might be the same from year to year, but it's precisely that. It's an assertion of legal authority. It's not challenged conduct, that is, or a policy that is affecting plaintiffs in a way that would permit this court to determine that an exception to mootness applied. I mean, I guess another way of asking the question is, don't we assess jurisdiction in this context, the repetition issue, claim by claim? And if the broad legal challenge that the seven factors are exclusive, that might be likely to repeat and the other ones might not. Why don't we at least review the claim that's likely to repeat? I think you're right that the court would assess jurisdiction in that way, but here the court's inquiry about whether there's an underlying policy or if the challenged conduct or legal harms plaintiffs suffer, satisfy an exception to mootness, really turns on whether there is a policy determination. No, those are different. One theory is they're challenging a policy. A different theory is that there are various discrete controversies that will repeat. Whether there are legal harms that will repeat under the capable repetition, the two inquiries are somewhat similar, Your Honor. And here, the way in which they're similar matters because what plaintiffs are challenging is the agency's assertion of discretion that will manifest itself in different ways as the differences between fiscal year 2018 and fiscal year 2019 show. And the commonality is simply the agency's assertion of discretion, not conduct or policies that harm plaintiffs in their theory. How about the notice and comment piece of it? Because in terms of capable of repetition, is it not capable of repetition that adjustments to the seven will be made without notice and comment? Again, Your Honor, it may be. But I think that what matters for the purposes of the capable of repetition is what the agency is actually doing, not its assertion that it has discretion to change the way it gathers information. I mean, a challenge at that level of generality simply just isn't live in the court, not in the jurisdiction. It would be an advisory opinion. Your Honor, to adjudicate at that level of abstraction sort of the agency's assertion that it can make changes in the future. But it's done it. It did it in 2018 and in 2019 without notice and comment. It did, Your Honor. But again, those are. Why doesn't that seem like capable of repetition if it, in fact, was repeated? Again, the agency has made changes and will make changes to the way it processes, sensibly will, to the way it processes and consumes applications. But that doesn't mean that its assertion of authority to do that is somehow concrete enough for this court to adjudicate at this stage. The question whether notice and comment is required would turn in part on the particulars of the yearly announcement, right? The extent to which it looks legislative rather than procedural. Exactly, Your Honor. If I may, this dovetails with why the plaintiffs have not satisfied the final agency action requirement of review here. And their claims are unreviewable because what they've challenged not only is the announcement of the agency's decision-making process, but merely an interim stage, as we clarified earlier, that these are scoring criteria. It's a method of collecting information, analyzing information, and ultimately informing the final agency decision-makers' decisions. For similar reasons. So by that understanding, then, there could be a new criterion added to the seven that are in the regulation, and it could be completely dispositive. I mean, the agency could switch things around so that it says there are seven criteria, and previously they've each gotten one-seventh of the total, but now they're going to each get one-twenty-fifth, and this new criterion is going to be basically the deciding criterion. And that would still not be final agency action that's reviewable. Your Honor, I would dispute the proposition that it would be dispositive, because, of course, these are merely scoring criteria that an independent review panel used. They would be dispositive for purposes of the score that the independent review panel used. Exactly, but not dispositive for the agency's decision. Sure. So then, if that's true, then the agency could construct a regime under which it gives a scoring criteria, and it could be true as a matter of fact that every single time the final decision maker actually ratifies the decision that's made on the scoring criteria, but all the agency would have done is to reserve discretion, as a matter of theory, in the final decision maker. And then the government's argument would be, well, no final agency action. Well, Your Honor, yes. I mean, and if that were true, then the plaintiffs might have a claim that the agency didn't follow the statutory and regulatory directives to take into account. I just don't know. It could still be reviewed at the final. Exactly, Your Honor. That the appropriate mechanism for review is once the agency has concluded. If there's a defect in getting there, that defect can be raised at the final review. After funds are obligated, it can't. Yes, Your Honor, that is correct, for the reasons that we. But at the conclusion of the agency's decision-making process, and this is just a feature of grants-making and the types of agency decision-making that is issued here, but that doesn't take it outside of the structures of the APA. Well, maybe that's why there's an exception in the APA for grants. To the notice and comment provision. Yes, Your Honor. But final agency action is certainly defined in terms of the decision to issue or deny a grant. And those requirements would apply here. On finality, Soundboard seems to me a pretty strong case for you in focusing the inquiry on just the formal structure of the agency decision-making process. But what about cases like SACID and HAWQS, which are cited but not really highlighted? I'm remembering those cases for proposition that the Supreme Court has recently told us to, to some extent, assess practicality in applying the finality doctrine. But the practicality consideration is about whether the agency's decision is practically final. And here, there's no sense in which the scoring decisions or the announcement of scoring criteria are practically final. No, but if practicality is that the window for review of the later action is two weeks, and the only way to get it is to seek a massive TRO that would shut down the funding program-wide, that doesn't seem terribly appealing. And my question is, do we just have to ignore that because the agency decision-making is structured the way it's structured? Your Honor, yes. I think that there are final agency decisions that, because of the nature of the funding cycle or the governmental process at issue, may provide for a fairly narrow window of review after the consummation of the agency's decision-making process. But it's certainly that feature of a particular agency's decision doesn't take it outside of the APA's requirement of final agency action. The Court has no further questions. Thank you. Thank you, Counsel. We'll give you your three minutes. Oh, thank you very much, Your Honor. One point I should have made when I was up here before is that some of the plaintiffs here actually changed their decisions about what services they would offer in order to meet the agency's new grant criteria. And some of them received grants. They would have preferred to do something else. I mean, they think what the agency did here is not lawful. They would have preferred to do something else. Assuming that that applicant got the grant, I'm not sure how that person could ever challenge the unlawful criteria post-grant. I don't see how they could challenge an award that they got, which is some of our plaintiffs. So this, I think, puts another spotlight on the problem with the agency's decision. This case is not about particular grant decisions. This case is about a change to the system. And as a practical matter, it's just not possible to challenge that. Indeed, I'm very surprised to hear my colleague say here that there is judicial review of the final grant decisions because the Department of Justice consistently argues that final grant decisions are not subject to judicial review by law at all. And the agency argued that below. And so I think when you put together what the agency is arguing here and what the district court concluded, which is, you know, you can't review the announcement of the grant criteria first. And then when you put together that, essentially the agency is saying there is no judicial review of what we're doing. Let me suggest sort of a slightly different way of looking at it. Suppose that the agency had actually revised its regulation and had, through notice and comment, added an eighth criterion. You know, so no notice and comment argument, but we had the view that that was substantively illegal and arbitrary capricious, no support in the administrative record. It's very hard for me to believe that an actual legislative regulation issued by the agency, and everybody agrees here that 59.7 is a legislative rule. It's very hard for me to believe that an actual legislative regulation could not be final agency action and not challenged. Because, and yet, that's basically, you know, in our view, that's basically what the agency is doing here. Even though, even in that situation, you could hypothesize a chain of events under which the eighth criterion is added substantively to the regulation, well, substantively is a question bank, but is added to the regulation. Then a grant, somebody applies for the grant, but wants to make a challenge to the addition of the eighth criterion, and so applies for the grant based on the seven criteria, knowing that they're not going to get it. Some could apply for it knowing that they're not going to get it. And not get it, and then challenge the final decision not to get the grant. I don't see, but some might actually change their tune and say, you know, I'm willing, you know, I'm not willing to risk it. And I don't see how that person could ever challenge that after the grant award, and I'm sure the Department of Justice would argue that they couldn't. Putting that, all of that together, this has to be the only time, this has to be the time when this kind of challenge can be made. Thank you very much. Thank you, counsel. Thank you, counsel. Case is submitted. Stand, please. This is all the court. Now stand adjourned until tomorrow morning at 9 a.m.
judges: Srinivasan, Katsas, Sentelle